[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff AFSCME, Council #15, Local #407 ("Union") has filed an application to vacate an arbitration award of the State of Connecticut Board of Mediation and Arbitration ("Board") in favor of the respondent, Town of Stratford ("Town").
The arbitration award, entered on June 5, 2001, and received by the Union on June 6, 2001, concerns a grievance brought by the union concerning a claimed violation of the collective bargaining agreement between the Union, which represents a bargaining unit composed of police officers, and the Town of Stratford, their employer.
Article 16, Section 3, Step 4 of the collective bargaining agreement sets forth that arbitration shall be the final step in the grievance procedure between the Town and the Union.
The parties submitted to the following issue to be decided by the Board: "Whether the Town of Stratford violated the Collective Bargaining Agreement when it failed to select Officer Sampson for the crime suppression unit? If so, what shall the remedy be?" CT Page 14994
The award of the board stated, "The Town did not violate the Collective Bargaining Agreement when it failed to select Officer Sampson for the crime suppression unit." Accompanying this award was a list of the Collective Bargaining Agreement sections involved, a statement of facts, a summary of the parties' positions and a discussion. In the discussion, the Board noted that there was nothing in the Collective Bargaining Agreement which required the Town to select the employee for the crime suppression unit based on seniority, as the Union urged. The discussion noted that only the Marine Unit and Canine Unit were required to select based on seniority, under the Collective Bargaining Agreement. Further, it noted that an evaluation matrix system for hires for the crime suppression unit was developed only as a tool or guideline for the Chief of Police, acting on behalf of the Town, in deciding who to hire; it did not bind him.
Connecticut General Statutes § 52-418 lists the only grounds upon which an arbitration award may be vacated. of those enumerated grounds, the Union has invoked, in its application, grounds (3) and (4). However, at the time of briefing, the Union abandoned (3).[1] The appeal relied, then, on § 52-418 (a)(4), which provides that an arbitration award may be vacated if the award has a defect that ". . . the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made."
The Union's specific claim here is that the collective bargaining agreement is unambiguous and therefore, that the submission to the Board was restricted and, accordingly, the Board exceeded its powers by considering the practices of the Town. In the alternative the Union argues that if the court finds the submission unrestricted, the Board's award was defective because it improperly interpreted the collective bargaining agreement.
Standard of Review
"Where the parties have voluntarily and contractually agreed to submit to arbitration and have delineated the powers of the arbitrator through their submission, then the scope of judicial review of the award is limited by the terms of the parties' agreement and by the provisions of General Statutes 52-418. See Bruno v. Department of Consumer Protection,190 Conn. 14, 18, 458 A.2d 685 (1983); Carroll v. Aetna Casualty SuretyCo., supra, 21; Bic Pen Corporation v. Local No. 194, 183 Conn. 579,583, 440 A.2d 774 (1981); Waterbury v. Waterbury Police Union, supra,403, 407; American Motorists Ins. Co. v. Brookman, 1 Conn. App. 219,221-22, 470 A.2d 253, cert denied, 193 Conn. 801, 473 A.2d 1226 (1984). CT Page 14995 Thus, in determining whether an arbitrator has exceeded his authority or improperly executed the same under 52-418 (a), the courts need only examine the submission and the award to determine whether the award conforms to the submission. Wilson v. Security Ins. Group, supra,626-27; Board of Education v. AFSCME, supra, 271; Caldor, Inc. v.Thornton, 191 Conn. 336, 340, 464 A.2d 785 (1983), aff'd, 472 U.S. 703,105 S.Ct. 2914, 86 L.Ed.2d 557 (1985); Waterbury Construction Co. v.Board of Education, 189 Conn. 560, 563, 457 A.2d 310 (1983); Bic PenCorporation v. Local No. 134, supra, 584; Malecki v. Burnham, supra,213; Waterbury v. Waterbury Police Union, supra, 404; Ramos Iron Works,Inc. v. Franklin Construction Co., supra, 587-88, 590; Board of Educationv. Bridgeport Education Assn., 173 Conn. 287, 291, 377 A.2d 323 (1977). Under an unrestricted submission, the arbitrators' decision is considered final and binding; thus the courts will not review the evidence considered by the arbitrators nor will they review the award for errors of law or fact. Wilson v. Security Ins. Group, supra, 626-27; Bruno v.Department of Consumer Protection, supra, 18-19; Carroll v. AetnaCasualty Surety Co., supra, 19; Bridgeport v. Bridgeport Police Local1159, 183 Conn. 102, 105-106, 438 A.2d 1171 (1981); Milford EmployeesAssn. v. Milford, 179 Conn. 678, 683, 427 A.2d 859 (1980); Waterbury v.Waterbury Police Union, supra; Meyers v. Lakeridge Development Co.,173 Conn. 133, 135, 376 A.2d 1105 (1977); American Motorists Ins. Co. v.Brookman, supra, 223." American Universal Ins. Co. v. DelGreco,205 Conn. 178, 185-6, 530 A.2d 171 (1987).
Discussion
The Statement of Facts of the Board establish the following, by way of background. "On or about May 3, 1996, the Stratford Police Department created a Crime Suppression Unit, setting out goals, objectives, evaluations, and considerations for assignment. . . . On or about January 28, 2000, the Police Department posted a notice, a sign-up schedule, and a supplement entitled "Police Information-Crime Suppression Unit". . . . Approximately twenty four members of the department signed up for four positions. . . . At some point after the postings, Chief Mossman approached Captain Knapp and Captain Aurelia and asked them to develop criteria to assist in choosing the four positions. . . . A "matrix" was developed, and utilizing a number of categories, each of the twenty four applicants were ranked for Crime Suppression and HUD. . . . The department filled the two HUD positions picking Officers . . . who were ranked number 1 and number 2 respectively. For Crime Suppression, the department picked Officers . . . who were ranked number 1 and number 4, respectively. . . . On or about March 29, 2000, the Police Union filed a grievance on behalf of Officer Sampson, who was ranked number, but was not picked for the Crime Suppression Unit. On November 1, 2000, a hearing was held before a tripartite panel of arbitrators from the Connecticut CT Page 14996 State Board of Mediation and Arbitration."
The Union urges the court to find that the submission was restricted. However, there is nothing restricted about it in its language. The question before the Board did not limit them as urged by the Union.[2]
The Union argues that the language of the collective bargaining agreement restricted the Board when it provided, "Said Board shall be limited to the express terms of the contract and shall not have the power to modify, amend or delete any terms or provisions of the Agreement, or render a decision contrary to the law." What the Union is really arguing is that the Board's construction of the agreement was wrong. However, that does not in itself determine the restricted or unrestricted character of the submission by the parties to the Board. Neither the submission itself nor the arbitration provisions of the Collective Bargaining Agreement render the submission restricted. Accordingly, it is an unrestricted submission.
This court, then will not review the evidence considered by the Board nor review the arward for errors of law or fact. The only inquiry is whether the award conforms to the submission. The Union argues that the court, in this inquiry, can determine whether the award conforms to the language of the Collective Bargaining Agreement.
"There are limited circumstances in which a court will conduct a broader review of an arbitrator's decision. Where one party claims that the award, as issued, is inherently inconsistent with the underlying collective bargaining agreement, the court will compare the agreement with the award to determine whether the arbitrator has ignored his obligation to interpret and apply that agreement as written. Hudson WireCo. v. Winsted Brass Workers Union, 150 Conn. 546, 553, 191 A.2d 557(1963). This additional analysis is conducted pursuant to such a claim because "an arbitrator's award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of this award.'" Darien Education Assn. v.Board of Education, 172 Conn. 434, 437, 374 A.2d 1081 (1977), quotingUnited Steelworkers v. Enterprise Wheel Car Corporation, 363 U.S. 593,597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)." Board of Education v. Local818, 5 Conn. App. 636, 640, 502 A.2d 426 (1985).
Article 12 of the Collective Bargaining Agreement is entitled `Seniority'. The Union argues that the Board was not faithful to the Agreement when it failed to rule that Article 12 Section 5 mandates assignments in accordance with seniority if the Collective Bargaining Agreement is otherwise silent on the issue. Article 12 Section 5[3] of the Collective Bargaining Agreement is ambiguous. It is contained within CT Page 14997 the context of the overall seniority article. The first three sections define how seniority accrues. Section 4 then makes clear that reductions in force shall be accomplished in inverse order of seniority. When examining the balance of the agreement only in the Marine and Canine Units are there specific references to how seniority applies to management's assignment of staff. In the Management Rights portion of the Agreement, section 17, it is provided that, "[e]xcept where such rights, powers, and authority are specifically relinquished, abridged or limited by provisions of the Agreement, the Town has and will continue to retain, whether exercised or not all of the rights, powers and authority heretofore hand by it and, except where such rights, powers and are specifically relinquished, abridged or limited by the provisions of theis Agreement, it shall have the sole and unquestioned right, responsibility and prerogative of management of the affairs of the Town and Direction the working forces. . . ."
Article 12 Section 5 states that seniority shall apply to any dispute between employees not covered by the Agreement. The dispute here is between Management (the Town) and an employee as represented by the Union. Therefore, the Board's ruling that the Town did not violate the Collective Bargaining Agreement is not unfaithful to the Agreement and does not result in an altering, amending or adding to the provisions of Article 12 Section 5, or the Agreement as a whole.
The court does not find that the Board's arbitrators exceeded their powers. The application to vacate the award is therefore denied.
By the court
Lynda B. Munro Judge of the Superior Court